IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA AND LAKE CHARLES DIVISIONS

RICKEY DALE CONLEY, ET AL

VS.

LAKE CHARLES SCHOOL BOARD,
a corporation, and G. W. FORD,
Superintendent; and CALCASIEU
PARISH SCHOOL BOARD, a corpora-
tion and H. A. NORTON, Super-
intendent

CIVIL ACTION 9981

000

MARCUS GORDON, ET AL

VS.

JEFFERSON DAVIS PARISH SCHOOL
BOARD, and J. C. NEELY, Super-
intendent

CIVIL ACTION 10902

000

VIRGIE LEE VALLEY, ET AL

VS.

RAPIDES PARISH SCHOOL BOARD,
a corporation, and C. R. SANDERS,
Superintendent

CIVIL ACTION 10946

000

UNITED STATES OF AMERICA, by
NICHOLAS deB. KATZENBACH,
Attorney General of the
United States

VS.

LA SALLE PARISH SCHOOL BOARD,
ET AL

CIVIL ACTION 12178

(Cont'd)

UNITED STATES OF AMERICA

        VS.                              CIVIL ACTION 12265

GRANT PARISH SCHOOL BOARD,
ET AL

000

UNITED STATES OF AMERICA

        VS.                              CIVIL ACTION 12721

AVOYELLES PARISH SCHOOL BOARD,
ET AL

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
F I L E D

APR 17 1967

ALLON CURTIS, CLERK
BY: _____
DEPUTY CLERK

HUNTER, JUDGE:

Pending in each of these cases are motions for entry of decree attached to the opinion of the Fifth Circuit Court of Appeals decision of March 29, 1967 in certain consolidated school desegregation cases.[1]

The decree is not as I would have written it, had the responsibility been mine in the first instance. Four of the Judges of the Court of Appeals stated their disagreement with it. It is important, however, that these comments of mine not mislead any person having responsibility in the area of school desegregation. The holding of the majority of the Court of Appeals is the law in this circuit and will be followed. We do not interpret the decree to be an abandonment of freedom of choice, if that choice is real instead of make believe.

The critical problem for us all is that we not bring about irreparable injury to our public schools while in the process of eliminating dual school systems. Thoroughly appreciating that room for reasonable men of good will to solve these complex community problems must be preserved, this Court will consider, upon request, any and all local problems which arise.

The attached "corrected decree" supersedes all previous orders entered in these cases and will issue forthwith.

The Clerk will prepare sufficient copies for service on all parties.

Lake Charles, Louisiana, April 17th, 1967.

Edwin F. Hunter

UNITED STATES DISTRICT COURT

---

1. Nos. 23173, 23192, 23253, 23274, 23331, 23335, 23365.

1001

# D E C R E E

It is ORDERED, ADJUDGED and DECREED that the defendants, their agents, officers, employees and successors and all those in active concert and participation with them, be and they are permanently enjoined from discriminating on the basis of race or color in the operation of the City and Parish School Systems in Calcasieu, Jefferson Davis, Rapides, LaSalle, Grant and Avoyelles Parishes. As set out more particularly in the body of the decree, they shall take affirmative action to disestablish all school segregation and to eliminate the effects of the dual school system:

## I.

### SPEED OF DESEGREGATION

Commencing with the 1967-68 school year, in accordance with this decree, all grades, including kindergarten grades, shall be desegregated and pupils assigned to schools in these grades without regard to race or color.

## II.

### EXERCISE OF CHOICE

The following provisions shall apply to all grades:

(a) <u>Who May Exercise Choice</u>. A choice of schools may be exercised by a parent or other adult person serving as the student's parent. A student may exercise his own choice if

- 2 -

he (1) is exercising a choice for the ninth or a higher grade, or (2) has reached the age of fifteen at the time of the exercise of choice. Such a choice by a student is controlling unless a different choice is exercised for him by his parent or other adult person serving as his parent during the choice period or at such later time as the student exercises a choice. Each reference in this decree to a student's exercising a choice means the exercise of the choice, as appropriate, by a parent or such other adult, or by the student himself.

(b) _Annual Exercise of Choice_. All students, both white and Negro, shall be required to exercise a free choice of schools annually.

(c) _Choice Period_. The period for exercising choice shall commence May 1, 1967 and end June 1, 1967, and in subsequent years shall commence March 1 and end March 31 preceding the school year for which the choice is to be exercised. No student or prospective student who exercises his choice within the choice period shall be given any preference because of the time within the period when such choice was exercised.

(d) _Mandatory Exercise of Choice_. A failure to exercise a choice within the choice period shall not preclude any student from exercising a choice at any time before he commences school for the year with respect to which the choice applies, but such choice may be subordinated to the choices of students who exercised choice before the expiration of the choice period. Any student who has not exercised his choice of school within a week after school opens shall be assigned to the school nearest his home where space is available under

- 3 -

standards for determining available space which shall be applied uniformly throughout the system.

(e) _Public Notice_. On or within a week before the date the choice period opens, the defendants shall arrange for the conspicuous publication of a notice describing the provisions of this decree in the newspaper most generally circulated in the community. The text of the notice shall be substantially similar to the text of the explanatory letter sent home to parents. Publication as a legal notice will not be sufficient. Copies of this notice must also be given at that time to all radio and television stations located in the community. Copies of this decree shall be posted in each school in the school system and at the office of the Superintendent of Education.

(f) _Mailing of Explanatory Letters and Choice Forms_. On the first day of the choice period there shall be distributed by first-class mail an explanatory letter and a choice form to the parent (or other adult person acting as parent, if known to the defendants) of each student, together with a return envelope addressed to the Superintendent. Should the defendants satisfactorily demonstrate to the court that they are unable to comply with the requirement of distributing the explanatory letter and choice form by first-class mail, they shall propose an alternative method which will maximize individual notice, i.e., personal notice to parents by delivery to the pupil with adequate procedures to insure the delivery of the notice. The text for the explanatory letter and choice form shall essentially conform to the sample letter and choice form appended to this decree.

- 4 -

(g) <u>Extra Copies of the Explanatory Letter and Choice Form</u>. Extra copies of the explanatory letter and choice form shall be freely available to parents, students, prospective students, and the general public at each school in the system and at the office of the Superintendent of Education during the times of the year when such schools are usually open.

(h) <u>Content of Choice Form</u>. Each choice form shall set forth the name and location and the grades offered at each school and may require of the person exercising the choice the name, address, age of student, school and grade currently or most recently attended by the student, the school chosen, the signature of <u>one</u> parent or other adult person serving as parent, or where appropriate the signature of the student, and the identity of the person signing. No statement of reasons for a particular choice, or any other information, or any witness or other authentication, may be required or requested, without approval of the court.

(i) <u>Return of Choice Form</u>. At the option of the person completing the choice form, the choice may be returned by mail, in person, or by messenger to any school in the school system or to the office of the Superintendent.

(j) <u>Choices not on Official Form</u>. The exercise of choice may also be made by the submission in like manner of any other writing which contains information sufficient to identify the student and indicates that he has made a choice of school.

(k) <u>Choice Forms Binding</u>. When a choice form has once been submitted and the choice period has expired, the choice is binding for the entire school year and may not be changed

- 5 -

except in cases of parents making different choices from their children under the conditions set forth in paragraph II (a) of this decree and in exceptional cases where, absent the consideration of race, a change is educationally called for or where compelling hardship is shown by the student. A change in family residence from one neighborhood to another shall be considered an exceptional case for purposes of this paragraph.

(1) _Preference in Assignment_. In assigning students to schools, no preferences shall be given to any student for prior attendance at a school and, except with the approval of court in extraordinary circumstances, no choice shall be denied for any reason other than overcrowding. In case of overcrowding at any school, preference shall be given on the basis of the proximity of the school to the homes of the students choosing it, without regard to race or color. Standards for determining overcrowding shall be applied uniformly throughout the system.

(m) _Second Choice where First Choice is Denied_. Any student whose choice is denied must be promptly notified in writing and given his choice of any school in the school system serving his grade level where space is available. The student shall have seven days from the receipt of notice of a denial of first choice in which to exercise a second choice.

(n) _Transportation_. Where transportation is generally provided, buses must be routed to the maximum extent feasible in light of the geographic distribution of students, so as to serve each student choosing any school in the system. Every student choosing either the formerly white or the formerly

Negro school nearest his residence must be transported to the school to which he is assigned under these provisions, whether or not it is his first choice, if that school is sufficiently distant from his home to make him eligible for transportation under generally applicable transportation rules.

(o) _Officials not to Influence Choice._ At no time shall any official, teacher, or employee of the school system influence any parent, or other adult person serving as a parent, or any student, in the exercise of a choice or favor or penalize any person because of a choice made. If the defendant school board employs professional guidance counselors, such persons shall base their guidance and counselling on the individual student's particular personal, academic and vocational needs. Such guidance and counselling by teachers as well as professional guidance counsellors shall be available to all students without regard to race or color.

(p) _Protection of Persons Exercising Choice._ Within their authority school officials are responsible for the protection of persons exercising rights under or otherwise affected by this decree. They shall, without delay, take appropriate action with regard to any student or staff member who interferes with the successful operation of the plan. Such interference shall include harassment, intimidation, threats, hostile words or acts, and similar behavior. The school board shall not publish, allow, or cause to be published, the names or addresses of pupils exercising rights or otherwise affected by this decree. If officials of the school system are not able to provide sufficient protection, they shall seek whatever assistance is necessary from other appropriate officials.

- 7 -

III.

## PROSPECTIVE STUDENTS

Each prospective new student shall be required to exercise a choice of schools before or at the time of enrollment. All such students known to defendants shall be furnished a copy of the prescribed letter to parents, and choice form, by mail or in person, on the date the choice period opens or as soon thereafter as the school system learns that he plans to enroll. Where there is no pre-registration procedure for newly entering students, copies of the choice forms shall be available at the office of the Superintendent and at each school during the time the school is usually open.

IV.

## TRANSFERS

(a) Transfers for Students. Any student shall have the right at the beginning of a new term, to transfer to any school from which he was excluded or would otherwise be excluded on account of his race or color.

(b) Transfers for Special Needs. Any student who requires a course of study not offered at the school to which he has been assigned may be permitted, upon his written application at the beginning of any school term or semester, to transfer to another school which offers courses for his special needs.

(c) Transfers to Special Classes or Schools. If the defendants operate and maintain special classes or schools for physically handicapped, mentally retarded, or gifted children, the defendants may assign children to such schools or classes on a basis related to the function of the special class or school

- 8 -

that is other than freedom of choice.  In no event shall such assignments be made on the basis of race or color or in a manner which tends to perpetuate a dual school system based on race or color.

V.

## SERVICES, FACILITIES, ACTIVITIES AND PROGRAMS

No student shall be segregated or discriminated against on account of race or color in any service, facility, activity, or program (including transportation, athletics, or other extracurricular activity) that may be conducted or sponsored by the school in which he is enrolled.  A student attending school for the first time on a desegregated basis may not be subject to any disqualification or waiting period for participation in activities and programs, including athletics, which might otherwise apply because he is a transfer or newly assigned student except that such transferees shall be subject to longstanding, non-racially based rules of city, county, or state athletic associations dealing with the eligibility of transfer students for athletic contests.  All school use or school-sponsored use of athletic fields, meeting rooms, and all other school related services, facilities, activities, and programs such as commencement exercises and parent-teacher meetings which are open to persons other than enrolled students, shall be open to all persons without regard to race or color.  All special educational programs conducted by the defendants shall be conducted without regard to race or color.

VI.

## SCHOOL EQUALIZATION

(a) _Inferior_ _Schools_. In schools heretofore maintained for Negro students, the defendants shall take prompt steps necessary to provide physical facilities, equipment, courses of instruction, and instructional materials of quality equal to that provided in schools previously maintained for white students. Conditions of overcrowding, as determined by pupil-teacher ratios and pupil-classroom ratios shall, to the extent feasible, be distributed evenly between schools formerly maintained for Negro students and those formerly maintained for white students. If for any reason it is not feasible to improve sufficiently any school formerly maintained for Negro students, where such improvement would otherwise be required by this paragraph, such school shall be closed as soon as possible, and students enrolled in the school shall be reassigned on the basis of freedom of choice. By October of each year, defendants shall report to the Clerk of the Court pupil-teacher ratios, pupil-classroom ratios, and per-pupil expenditures both as to operating and capital improvement costs, and shall outline the steps to be taken and the time within which they shall accomplish the equalization of such schools.

(b) _Remedial_ _Programs_. The defendants shall provide remedial education programs which permit students attending or who have previously attended segregated schools to overcome past inadequacies in their education.

2000

VII.

## NEW CONSTRUCTION

The defendants, to the extent consistent with the proper operation of the school system as a whole, shall locate any new school and substantially expand any existing schools with the objective of eradicating the vestiges of the dual system.

VIII.

## FACULTY AND STAFF

(a) _Faculty Employment_.    Race or color shall not be a factor in the hiring, assignment, reassignment, promotion, demotion, or dismissal of teachers and other professional staff members, including student teachers, except that race may be taken into account for the purpose of counteracting or correcting the effect of the segregated assignment of faculty and staff in the dual system.    Teachers, principals, and staff members shall be assigned to schools so that the faculty and staff is not composed exclusively of members of one race.    Wherever possible, teachers shall be assigned so that more than one teacher of the minority race (white or Negro) shall be on a desegregated faculty.    Defendants shall take positive and affirmative steps to accomplish the desegregation of their school faculties and to achieve substantial desegregation of faculties in as many of the schools as possible for the 1967-68 school year notwithstanding that teacher contracts for the 1967-68 or 1968-69 school years may have already been signed and approved.    The tenure of teachers in the system shall not be used as an excuse for failure to comply with this provision.    The defendants shall establish as

an objective that the pattern of teacher assignment to any particular school not be identifiable as tailored for a heavy concentration of either Negro or white pupils in the school.

(b) _Dismissals._ Teachers and other professional staff members may not be discriminatorily assigned, dismissed, demoted, or passed over for retention, promotion, or rehiring, on the ground of race or color. In any instance where one or more teachers or other professional staff members are to be displaced as a result of desegregation, no staff vacancy in the school system shall be filled through recruitment from outside the system unless no such displaced staff member is qualified to fill the vacancy. If, as a result of desegregation, there is to be a reduction in the total professional staff of the school system, the qualifications of all staff members in the system shall be evaluated in selecting the staff member to be released without consideration of race or color. A report containing any such proposed dismissals, and the reasons therefor, shall be filed with the Clerk of the Court, serving copies upon opposing counsel, within five (5) days after such dismissal, demotion, etc., as proposed.

(c) _Past Assignments._ The defendants shall take steps to assign and reassign teachers and other professional staff members to eliminate the effects of the dual school system.

IX.

REPORTS TO THE COURT

(1) _Report on Choice Period._ The defendants shall serve upon the opposing parties and file with the Clerk of the Court ~~on or before April 15, 1967, and~~ on or before June 15, 1967, and

- 12 -

2002

in each subsequent year on or before June 1, a report tabulating by race the number of choice applications and transfer applications received for enrollment in each grade in each school in the system, and the number of choices and transfers granted and the number of denials in each grade of each school. The report shall also state any reasons relied upon in denying choice and shall tabulate, by school and by race of student, the number of choices and transfers denied for each such reason.

In addition, the report shall show the percentage of pupils actually transferred or assigned from segregated grades or to schools attended predominantly by pupils of a race other than the race of the applicant, for attendance during the 1966-67 school year, with comparable data for the 1965-66 school year. Such additional information shall be included in the report served upon opposing counsel and filed with the Clerk of the Court.

(2) _Report After School Opening_. The defendants shall, in addition to reports elsewhere described, serve upon opposing counsel and file with the Clerk of the Court within 15 days after the opening of schools for the fall semester of each year, a report setting forth the following information:

(i) The name, address, grade, school of choice and school of present attendance of each student who has withdrawn or requested withdrawal of his choice of school or who has transferred after the start of the school year, together with a description of any action taken by the defendants on his request and the reasons therefor.

- 13 -

(ii)   The number of faculty vacancies, by
school, that have occurred or been filled by the
defendants since the order of this Court or the latest
report submitted pursuant to this sub-paragraph.  This
report shall state the race of the teacher employed
to fill each such vacancy and indicate whether such
teacher is newly employed or was transferred from
within the system.  The tabulation of the number of
transfers within the system shall indicate the schools
from which and to which the transfers were made.  The
report shall also set forth the number of faculty
members of each race assigned to each school for the
current year.

(iii)   The number of students by race, in each
grade of each school.

X.

The Marshal shall serve each of defendant school boards
with a copy of this decree.

<u>EXPLANATORY LETTER</u>

(School System Name and Office Address)

(Date sent)

Dear Parent:

All grades in our school system will be desegregated next year. Any student who will be entering one of these grades next year may choose to attend any school in our system, regardless of whether that school was formerly all-white or all-Negro. It does not matter which school your child is attending this year. You and your child may select any school you wish.

Every student, white and Negro, must make a choice of schools. If a child is entering the ninth or higher grade, or if the child is fifteen years old or older, he may make the choice himself. Otherwise a parent or other adult serving as parent must sign the choice form. A child enrolling in the school system for the first time must make a choice of schools before or at the time of his enrollment.

The form on which the choice should be made is attached to this letter. It should be completed and returned by June 1, 1967. You may mail it in the enclosed envelope, or deliver it by messenger or by hand to any school principal or to the Office of the Superintendent at any time between May 1 and June 1. No one may require you to return your choice form before June 1 and no preference is given for returning the choice form early.

No principal, teacher or other school official is permitted to influence anyone in making a choice or to require early return of the choice form. No one is permitted to favor or penalize any student or other person because of a choice made.

A choice once made cannot be changed except for serious hardship.

No child will be denied his choice unless for reasons of overcrowding at the school chosen, in which case children living nearest the school will have preference.

Transportation will be provided, if reasonably possible, no matter what school is chosen. [Delete if the school system does not provide transportation.]

Your School Board and the school staff will do everything we can to see to it that the rights of all students are protected and that desegregation of our schools is carried out successfully.

Sincerely yours,

Superintendent.

## CHOICE FORM

This form is provided for you to choose a school for your child to attend next year. You have 30 days to make your choice. It does not matter which school your child attended last year, and does not matter whether the school you choose was formerly a white or Negro school. This form must be mailed or brought to the principal of any school in the system or to the office of the Superintendent, [address]; by June 1, 1967. A choice is required for each child.

Name of child . . . . . . . . . . . . . . . . . . . . . . . . .
                    (Last)     (First)    (Middle)

Address . . . . . . . . . . . . . . . . . . . . . . . . . . .

Name of Parent or other
adult serving as parent  . . . . . . . . . . . . . . . . . .

If child is entering first grade, date of birth:

                             . . . . . . . . . . . . .
                             (Month)  (Day)   (Year)

Grade child is entering . . . . . . . . . . . . . . . . . . .

School attended last year  . . . . . . . . . . . . . . . .

Choose one of the following schools by marking an X beside
the name.

| Name of School | Grade | Location |
|---|---|---|
| . . . . . . . . . | . . . . . . . | . . . . . . . . . |
| . . . . . . . . . | . . . . . . . | . . . . . . . . . |
| . . . . . . . . . | . . . . . . . | . . . . . . . . . |
| . . . . . . . . . | . . . . . . . | . . . . . . . . . |

          Signature   . . . . . . . . . . . . .

          Date      . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

To be filled in by Superintendent:
          School Assigned  . . . . . . . . . . . . *

---

\* In subsequent years the dates in both the explanatory letter
and the choice form should be changed to conform to the choice
period.

2007

# CALCASIEU PARISH SCHOOL BOARD

**ADMINISTRATION BUILDING**
**1724 KIRKMAN STREET**
**LAKE CHARLES, LOUISIANA**

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
APR 17 1967
ALTON L. CURTIS, CLERK
BY _____ DEPUTY CLERK

April 10, 1967

C 1 V 9981

*These exceptions
as requested are
approved for the
1967-1968 Term
E7H
april 17, 1967*

Judge Edwin F. Hunter
U. S. District Court
921 Moss Street
Lake Charles, Louisiana

Dear Judge Hunter:

    I have read very carefully the latest decree handed down by the United States Court of Appeals for the Fifth Circuit pertaining to the requirements which school systems must meet regarding the speed of desegregation of the schools. May I respectfully call your attention to a situation in Calcasieu Parish that is unique in Louisiana and one which causes us to request some slight amendments in this latest decree. I refer to the merger of the Lake Charles City School System and the Calcasieu Parish School System, which does not become effective until July 1, 1967. This merger, as you well know, was brought about by Constitutional amendment approved in the November election of 1966 to provide a more economical school system for both parish and city and especially to relieve overcrowding in some of the south Lake Charles schools.

    At a meeting of the Calcasieu Parish School Board held on February 7, 1967 action was taken defining an attendance area and requiring children who are in the 9th, 10th or 11th grades and in attendance at either of the following schools to attend Lake Charles High School beginning with the fall of 1967-68; namely Rosteet Junior High School, Oak Park Junior High School, LaGrange Junior High School, S. J. Welsh Junior High School, and LaGrange Senior High School. The area was defined as that part of Ward Three north of Eighteenth Street, east of Highway 14, and south of Broad Street. The one exception to this assignment allowed by the Board is that next year's Seniors who are currently in attendance at

LaGrange Senior High and who live in this designated area would
be permitted a choice between Lake Charles High and LaGrange
Senior High. Since this attendance area was established well in
advance of the latest decree of the Court of Appeals, we respectfully
request that the action of the Board in this matter be permitted to
stand for LaGrange Senior High School cannot possibly accommodate
the students affected by this action of the Board. This action of the
Board was taken on a strictly non-racial basis as any child living in
this area and attending one of the aforementioned schools, whether
Negro or white, is covered by this Board requirement.

We further respectfully request that we be permitted to
deliver the explanatory letter and choice form required in this decree
to the students of each grade in each school in Calcasieu Parish on
May 1st, 1967 and that teachers instruct their pupils to deliver the
letters to their parents or guardian. We feel that this method of
distribution will be more effective than attempting to mail letters to
the parents of approximately 36,000 children involved, as addresses
furnished to us by students are often-times very inaccurate. In
addition to providing for more accurate delivery, our proposed method
of distribution will be far more economical and save a great deal of
staff time just when we are most busily occupied with a multitude of
duties as a result of the closing of school and the merger.

We also respectfully request that the assignment of the
students resulting from the provisions of the decree be delayed in
our case until after the effective date of the merger, which is July 1,
1967, and that we be permitted to have until August 1, 1967 to notify
children in Calcasieu of their assignments for the 1967-68 session.
This additional time is needed, we feel, so that the combined school
boards meeting after July 1st may take into account all of the schools
in Ward Three rather than deal with the problem as two separate school
systems. If each school system should act upon these assignments
prior to July 1st one could very well be counteracting the work of the
other Board.

Your consideration of these requests will be highly appreciated.

Respectfully submitted,


H. A. NORTON, Superintendent      G. W. FORD, Superintendent
Calcasieu Parish School s          Lake Charles City Schools


HAN/GWF/lh